ELIZABETH WINGATE v. VIRGIL GARRISON, ET AL.
ELIZABETH WINGATE v. GEORGE KALE, ET AL.

**Real Estate—Conveyance to Defraud Creditors—Action to Set Aside Conveyance.**

One who is insolvent may not convey his property as a gift to a member of his family and thus defraud his creditors; such a conveyance will be set aside.

**Action.**

A creditor whose claim has not been reduced to judgment, may sue on the same, and also to set aside a fraudulent conveyance, in one action.

APPEAL FROM LOUISVILLE CHANCERY COURT.

October 30, 1874.

OPINION BY JUDGE LINDSAY:

On the 30th of January, 1865, Dr. J. W. Knight conveyed to his daughter, Mrs. Wingate, who was residing with him, his house and lot in the city of Louisville, together with all his household and kitchen furniture.

The conveyance left the grantor without any visible property whatever. He was, at the time of its execution, practically insolvent. He had no other estate, and was indebted to the devisees of Martha Garrison, deceased, and of Philip Meyer, deceased, in large sums of money. He had been for many years a practicing physician, but by reason of his age, and of his habits of drinking to excess, his practice had ceased to be remunerative. Mrs. Wingate, the grantee, had resided with her father for about twenty years; except her daughter, now Mrs. Harris, the grantee and the grantor constituted the entire household. There was no marked or perceptible change of the mode of housekeeping after the conveyance. The grantor continued to reside in the house until his death in 1871. The circumstances proven all tend to show that Mrs. Wingate had no means of any kind in 1865, when she professes to have paid for this house and lot and furniture $12,000 in cash. As to Garrison's devisees, they all being infants, she was an incompetent witness; with her testimony excluded, there is practically no proof that she paid anything for the property.

The evidence produced by appellees as to the conveyance by Dr. Knight of all his visible estate, as to his insolvency, and as to Mrs.

Wingate's want of ability to pay, connected with the relationship of the parties, and the further facts that the grantor continued to reside in the house, and that there was no change in the manner of conducting the household matters, was sufficient to make out a *prima facie* case of a voluntary alienation by the grantor in fraud of appellees' rights. Mrs. Wingate might have contented herself with the denial of the material allegations of the two petitions, but she did not see proper to do so. She entered into an elaborate explanation of the circumstances, under which the conveyance was made, and of the necessity of some provision being made for the personal comforts of the grantor, and of the necessity of some one taking charge of the domestic affairs of the household. This explanation is utterly inconsistent with the idea that the conveyance was merely the consummation of actual business transactions.

Mrs. Wingate in her answer states that she had from 1846 up to 1865 advanced to her father large sums of money. She does not state except by implication that the advances were made upon the promise of her father to repay them. Nor is there any specific averment of such a state of facts, as show, necessarily, that she intended to require, or that her father expected to repay to her the money advanced. Her testimony does not present a much stronger case of indebtedness than her pleadings, except that she says she held a note for $3,000 advanced in 1846, and $550 advanced in 1854. She claims that she kept a memorandum of the other indebtedness by entries in a blank book. Giving to her statements the most favorable construction, it seems that the $12,000 cash payment on the property was made up of a $3,000 note that had been due for about nineteen years, of a $550 note that had been due over ten years, and of various other items for house rent collected, and for property invested by the grantor, which were evidenced only by memoranda.

On the 30th day of January, 1865, all these claims were barred by the statute of limitation except the note of $550. It is true the grantor was morally bound to pay them, notwithstanding the great lapse of time, and that other creditors can not complain that he recognized this moral obligation. But when we find him regarding his moral duty in regard to debts due to his daughter, and thereby securing to her and to himself a home during the remainder of his life, and making no provisions whatever for the payment of infant *cestui que* trust, whose money he had spent, it is difficult to conclude that the conveyance was made and executed in the discharge of a high moral obligation, the conviction is almost irresistible that these

sole claims were resurrected from the past, to give color to a transaction that the parties hoped would enable the daughter to continue in a position to minister to the comforts and growing wants in the old age, and rapidly coming helplessness of the father.

We do not doubt that Mrs. Wingate received some amount of money from the estate of her deceased husband, but it is almost impossible that it should have been so managed and controlled as' to clothe her and her daughter, and also to accumulate to the amount claimed to have been due her at the time she received the conveyance of her father's house and lot. The more natural conclusion is, and the testimony, all considered together tends to show, that the money received by her was gradually expended for the use and purposes of the household of which she was a member. Mrs. Wingate had no idea that her father would ever be reduced to poverty. She felt secure of a home for herself and daughter, and therefore expended, or permitted others to expend her money for the common comforts of the family without expectation or desire of repayment. Under such a state of case, the conveyance can not be. upheld to the prejudice of *bona fide* creditors.

The actions were maintainable without a judgment and return of no property found against the fraudulent grantor. He died before judgment. His estate is insolvent, and there has been no administration upon it. Appellees had the right, under the circumstances, to establish their debts against the heirs at law of Dr. Knight, and in the action instituted for that purpose to attack the conveyance to Mrs. Wingate. Such practice has been allowed even whilst the grantor was still alive, and as it is admitted that Dr. Knight's estate it utterly and hopelessly insolvent, there was no reason whatever for requiring appellees to engage in expensive and useless litigation with its representatives, merely to prepare for the ultimate attack upon the conveyance to Mrs. Wingate. There can be no serious question that the devisees of Garrison and of Meyer are entitled to the amount allowed them respectively. Meyer's devisees have no claim to the interest devised to Mrs. Meyers, afterwards Mrs. McMahon. If Dr. Knight failed to pay such interest over to her, the right of action therefore is in her personal representative, and not in the other devisees.

The two judgments are *affirmed*. On the cross-appeal the judgment of Meyers' heir and devisees is also *affirmed*.

*Bullitt & Bullitt, Harris, C. J. Clark, for appellant.*
*Lee & Rodman, for appellees.*